UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KIMBERLY WOZNICKI,

     Plaintiff,

  v.

COMMISSIONER OF SOCIAL
SECURITY,

     Defendant.

_____/

Case No. 20-11816

Laurie J. Michelson
United States District Judge

Curtis Ivy, Jr.
United States Magistrate Judge

**REPORT AND RECOMMENDATION ON
CROSS-MOTIONS FOR SUMMARY JUDGMENT (ECF Nos. 15, 18)**

  Plaintiff Kimberly Woznicki brings this action pursuant to 42 U.S.C. §§

405(g), 1383(c)(3) challenging the final decision of Defendant Commissioner of

Social Security ("Commissioner") denying her applications for Disability

Insurance Benefits and Supplemental Security Income under the Social Security

Act (the "Act").  This matter is before the United States Magistrate Judge for a

Report and Recommendation on Plaintiff's motion for summary judgment (ECF

No. 15), the Commissioner's cross-motion for summary judgment (ECF No. 18),

and the administrative record (ECF No. 12).

  For the reasons that follow, it is **RECOMMENDED** that the Court **DENY**

Plaintiff's motion for summary judgment (ECF No. 15), **GRANT** Defendant's

motion for summary judgment (ECF No. 18), and **AFFIRM** the Commissioner's decision.

## I.    DISCUSSION

### A.    Background and Administrative History

On April 19, 2017, Plaintiff filed an application for a period of disability and disability insurance benefits which alleged her disability began on June 2, 2015. (ECF No. 12, PageID.219-25).  On the same date, she also applied for supplemental security income alleging an onset date of April 19, 2017.  (*Id.* at PageID.226-31).  On April 21, 2017, she amended the disability onset date identified in her supplemental security income application to June 20, 2015.  (*Id.* at PageID.247-48).  On her respective applications, she identified the following impairments as limiting her ability to work: cardiomyopathy, congestive heart failure, left bundle branch block, pacemaker, anxiety, and major problems.  (*Id.* at PageID.115-16, 262).  Her claims were initially denied on December 14, 2017. (*Id.* at PageID.151, 159).  She requested a hearing on December 19, 2017 (*id.* at PageID.167), and appeared on March 19, 2019, before Administrative Law Judge ("ALJ") Janet L. Alaga-Gadigian.  (*Id.* at PageID.84-114).  Michael E. Rosko, a vocational expert ("VE"), testified in the matter.  (*Id.* at PageID.109-113).  On April 17, 2019, the ALJ issued an opinion, which determined that based on the (i) disability and disability insurance benefits application protectively filed on April

19, 2017, Plaintiff was not disabled under sections 216(i) and 223(d) of the Act and (ii) supplemental security income application protectively filed on April 19, 2017, Plaintiff was not disabled under section 1614(a)(3)(A) of the Act. (*Id.* at PageID.79).

Plaintiff submitted a request for review of the hearing decision on May 1, 2019. (*Id.* at PageID.215-18). On May 21, 2020, the Appeals Council denied Plaintiff's request for review. (*Id.* at PageID.54). Thus, the ALJ's decision became the Commissioner's final decision. Plaintiff timely commenced the instant action on July 4, 2020. (ECF No. 1).

**B.    Plaintiff's Medical History**

Woznicki's argument on appeal to this Court is limited to an issue regarding her chronic heart failure and the related symptoms. (ECF No. 15, PageID.816-22).[1] On October 4, 2015, Plaintiff was admitted to St. John Macomb Hospital after complaining of experiencing chest pain. (ECF No.12, PageID.318, 324). She informed the examining physician that 30 minutes prior to arriving at the emergency room she experienced acute left-sided chest and arm pain. (*Id.*). Her ejection fraction[2] ("EF") was recorded at 13%. (*Id.* at PageID.318). She was

---

[1] Plaintiff's motion for summary judgment focuses solely on her physical impairments and does not challenge the ALJ's findings regarding Plaintiff's mental impairments. Thus, the undersigned will not address the ALJ's findings and conclusions relating to the same.

[2] An EF "is a measurement of the percentage of blood leaving your heart each time it squeezes (contracts)." Rekha Mankad, M.D., Ejection Fraction: What does it Measure?, Mayo Clinic (Feb. 26, 2021), https://www.mayoclinic.org/ejection-fraction/expert-answers/faq-

diagnosed with ischemic cardiomyopathy[3] with NYHA Class II-III and systolic heart dysfunction. (*Id.* at PageID.382, 385). She was apparently provided with a ZOLL LifeVest.[4] (*Id.* at PageID.382, 780).

During the intake process, Plaintiff admitted to smoking approximately one pack of cigarettes a day for the last 32 years and consuming a number of beers on a daily basis. (*Id.* at PageID.330). She was discharged on October 6, 2015 and Dr. Koneru Srinivas noted on her discharge documentation that she had "severely decreased left ventricular ejection fraction with no major epicardial obstructive coronary artery disease." (*Id.* at PageID.319). To address the issue, Dr. Srinivas recommended "aggressive risk factor modification and medical therapy." (*Id.*). Further, before Plaintiff was discharged, the notes indicate Dr. Srinivas discussed (1) various exercise activities Plaintiff could partake in, (2) modifying her diet, and (3) smoking cessation. (*Id.*).

---

20058286. The EF is typically measured only in the left ventricle. *Id.* According to the American Heart Association, a normal EF is about 50% to 75%. *Id.* A borderline EF can range between 41% and 50%. *Id.* One of the most common tests used to measure EF is an echocardiogram. *Id.*

[3] Cardiomyopathy is a disease of the heart muscle that makes it harder for an individual's heart to pump blood to the rest of their body. Cardiomyopathy, Mayo Clinic, https://www.mayoclinic.org/diseases-conditions/cardiomyopathy/symptoms-causes/syc-20370709 (last visited on July 21, 2021).

[4] A ZOLL LifeVest is a "wearable cardioverter defibrillator (WCD) [ ]designed to protect patients at risk of sudden cardiac death (SCD), when a patient's condition is changing and permanent SCD risk has not been established." ZOLL LifeVest, https://lifevest.zoll.com/ (last visited July 21, 2021).

On November 20, 2015, Plaintiff returned to the hospital complaining of a malfunction of her ZOLL LifeVest. (*Id.* at PageID.359). She was sent to the emergency room because the siren on her ZOLL LifeVest was repeatedly ringing. (*Id.*). During the intake process, she reported she had been compliant with her treatment regimen and had otherwise been asymptomatic for the last few days. (*Id.*). However, she also disclosed that she continued to smoke and drink at least one beer daily. (*Id.*). The notes state she was able to ambulate without difficulty during the visit. (*Id.*). Ultimately, her ZOLL LifeVest threshold was increased to be triggered once she reached 180 heartbeats. (*Id.*).

In December 2015, Plaintiff saw Dr. Sujit Bhasin for treatment of shortness of breath. (*Id.* at PageID.780-84). Dr. Bhasin prescribed Losartan, recommended Plaintiff stop smoking and drinking alcohol, and start a low salt and low cholesterol diet. (*Id.* at PageID.783). Dr. Bhasin also recommended Plaintiff continue wearing her LifeVest and directed her to meet with a cardiac electrophysiologist. (*Id.* at PageID.783). She met with Dr. Gurjit Singh, a cardiac electrophysiologist, for the first time on December 17, 2015. (*Id.* at PageID.776). Dr. Singh noted that Plaintiff's cardiomyopathy was "likely nonischemic" and was "alcohol related." (*Id.*). He evaluated her for an implantable cardioverter defibrillator ("ICD") device, continued her heart medications, and noted no significant arrhythmias per her LifeVest. (*Id.*).

Approximately two months later, Plaintiff's February 23, 2016 Transthoracic Echocardiogram Report showed Plaintiff's EF was estimated to be 18% and fell within the range of 15-20%.  (*Id.* at PageID.485).

Dr. Singh sent a letter to Dr. Bhasin on March 14, 2016 providing an overview and update of Plaintiff's condition and disclosing that her EF was 18% despite being on optimal medical therapy.  (*Id.* at PageID.383).  Dr. Singh noted that while Plaintiff had decreased her alcohol intake significantly, she was still smoking but planned to reduce her smoking habit in the near future.  (*Id.*).  He noted Plaintiff continued to experience tiredness and fatigue but otherwise denied experiencing chest pain, palpitations, or shortness of breath at rest.  (*Id.*).  He also disclosed she was categorized as NYHA Class II-III.  (*Id.* at PageID.385).  Finally, he noted that she was a candidate for "ICD for primary prevention of sudden cardiac death" and "cardiac resynchronization therapy."  (*Id.*).  Dr. Singh's March 29, 2016 treatment notes indicate a biventricular pacemaker and implantable cardioverter defibrillator ("BiV-ICD") was successfully implanted on that day. (*Id.* at PageID.483).

On March 3, 2017, during Plaintiff's annual follow-up with Kristy Kazmierczak, PA, at the electrophysiology clinic for her BiV-ICD she stated she was "feeling better."  (*Id.* at PageID.504).  However, she did complain of "weakness, fatigue, weight gain, palpitations, [shortness of breath] with minimal

exertion (can not [sic] walk further than 1 block or climb more than 1 flight of stairs), orthopnea, lower extremity swelling which is also felt in her abdomen after she eats," and symptoms of heart failure.  (*Id.*).  The treatment notes also indicate Plaintiff was still attempting to quit smoking.  (*Id.*).

Less than three weeks later, on March 22, 2017, Plaintiff went to the Henry Ford Sterling Heights emergency room complaining that she didn't feel "right." (*Id.* at PageID.392).  Her symptoms included feeling fatigue, lightheadedness, dry mouth, palpitations, and tingling in her bilateral hands and feet.  (*Id.*).  On March 23, 2017, Plaintiff's EF was recorded at 49%.  (*Id.* at PageID.414, 466).  It was also noted that she had a mildly reduced left ventricular EF.  (*Id.* at PageID.414). She was advised to continue with her at-home medical treatment and follow up with a cardiologist.  (*Id.)*.

On April 13, 2017, Plaintiff saw Dr. Bhasin for a routine follow-up and was noted as "largely doing well."  (*Id.* at PageID.702).  The notes indicate she was positive for dyspnea on exertion but despite this was "stable and doing well on [her] current medical regimen.  (*Id.* at PageID.708, 712).  In the interim, she was also seen by Dr. Singh for follow-up and was recorded as having "stable NYHA II-III symptoms, and otherwise doing well."  (*Id.*).

On June 20, 2018, during a follow-up visit Plaintiff was noted as "overall doing well" while still experiencing NYHA Class II-III symptoms but had

experienced some recent orthopnea and intermittent PND without other complaints.  (*Id.* at PageID.640).  She was still smoking approximately five cigarettes a day but had stopped drinking alcohol.  (*Id.*).  On July 3, 2018, Plaintiff's EF was recorded at 45% in the range of 45-50% and it was noted she had no major valvular abnormalities.  (*Id.*).

Dr. Singh spoke with Plaintiff on February 12, 2019 after she missed her device check appointment and she was "apparently doing fine."  (*Id.* at PageID.641).  She provided a remote transmission of her device to Dr. Singh which showed episodes of supraventricular tachycardia.  (*Id.*).  She had an appointment set for March 5, 2019 to discuss supraventricular tachycardia ablation further.  (*Id.*).  The progress notes indicate "Dr. Singh felt this may be a component of what is contributing to her cardiomyopathy and preventing her from getting full benefit from her BiV pacer."  (*Id.*).  The notes indicate she continued to have NYHA Class II-III symptoms but Plaintiff expressed that she was "overall feeling ok."  (*Id.*).

## C.    The Administrative Decision

Pursuant to 20 C.F.R. § 404.1520(b), at **Step 1** of the sequential evaluation process, the ALJ found Plaintiff had not engaged in SGA since June 20, 2015, the alleged onset date.  (*Id.* at PageID.70).  At **Step 2**, the ALJ found that Plaintiff had the following severe impairments: chronic heart failure; depressive, bipolar, and

8

related disorders; anxiety; and obsessive-compulsive disorders.  (*Id.*).  The ALJ

concluded Plaintiff's bereavement disorder qualified as a non-severe impairment.

(*Id.* at PageID.71).  At **Step 3**, the ALJ found Plaintiff did not have an impairment

or combination of impairments that meet(s) or medically equal(s) the severity of

listings 4.02, 12.04, 12.06 or any other listed impairment in 20 C.F.R. Part 404,

Subpart P, Appendix 1 (20 C.F.R.§§ 404.1520(d), 404.1525, 404.1526, 416.920(d),

416.925 and 416.926).  (*Id.*).  Between **Steps 3** and **4** of the sequential process, the

ALJ evaluated Plaintiff's residual functional capacity ("RFC")[5] and determined

Plaintiff had the RFC

> to perform sedentary work as defined in 20 C.F.R.
> 404.1567(a) and 416.967(a) except there should be no
> foot control operation; no climbing of ladders, ropes,
> scaffolds; no crawling; occasional climbing of ramps,
> stairs, stooping, crouching, kneeling; no more than
> frequent reaching, except no overhead reaching; frequent
> gross manipulation; no exposure to hazardous machinery,
> unprotected heights, extreme cold or heat; no more than
> occasional exposure to wetness or humidity and
> environmental irritants; simple, routine tasks with no
> production rate pace; can perform simple, work-related
> decisions; no interaction with the public; and occasional
> interaction with coworkers and supervisors.

(*Id.* at PageID.72).  At **Step 4**, the ALJ determined that Plaintiff was unable to

perform any past relevant work.  (*Id.* at PageID.77).  Plaintiff has a limited

---

[5] The claimant's RFC is an assessment of the most the claimant can do in a work setting
despite his or her physical or mental limitations.  20 C.F.R. §§ 404.1545(a), 416.945(a); *Howard
v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002).

education and is able to communicate in English.  (*Id.*).  At **Step 5**, considering

Plaintiff's age, education, work experience and RFC, the ALJ determined there are

a significant number of jobs in the national economy that Plaintiff can perform.

(*Id.* at PageID.78).

### D.    Framework for Disability Determinations

Disability is defined in the Social Security Act as the "inability to engage in

any substantial gainful activity by reason of any medically determinable physical

or mental impairment which can be expected to result in death or which has lasted

or can be expected to last for a continuous period of not less than 12 months."  42

U.S.C. § 423(d)(1)(A).  In evaluating whether a claimant is disabled, the

Commissioner is to consider, in sequence, whether the claimant: (1) worked during

the alleged period of disability; (2) has a severe impairment; (3) has an impairment

that meets or equals the requirements of an impairment listed in the regulations; (4)

can return to past relevant work; and (5) if not, whether he or she can perform

other work in the national economy.  20 C.F.R. §§ 404.1520, 416.920.[6]  The

Plaintiff has the burden of proof at steps one through four, but the burden shifts to

the Commissioner at step five to demonstrate that, "notwithstanding the claimant's

impairment, he retains the residual functional capacity to perform specific jobs

---

[6] Citations to the regulations or Social Security Rulings are to those effective on the date
of the application for disability benefits or the ALJ's decision, where appropriate, unless
indicated otherwise.

existing in the national economy." *Richardson v. Sec'y of Health & Human Servs.*, 735 F.2d 962, 964 (6th Cir. 1984).

### E.    Standard of Review

The District Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g).  When reviewing a case under the Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'"  *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . .").  Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).  In deciding whether substantial evidence supports the ALJ's decision, the court does "not try the case *de novo*, resolve conflicts in evidence or decide questions of credibility."  *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Rogers*, 486 F.3d at 247 ("It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant.").

Although the substantial evidence standard is deferential, it is not trivial. The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)). Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). Finally, even if the ALJ's decision meets the substantial evidence standard, "'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

The Court's review is limited to an examination of the record only. *Bass v. McMahon*, 499 F.3d 506, 512-13 (6th Cir. 2007); *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including evidence which might subtract from its weight. *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). "Both the court of appeals and the district court may look to any evidence in the record, regardless of

whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). Neither the ALJ nor the Court is required to discuss every piece of evidence contained in the administrative record. *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006) ("[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal citation marks omitted); *see also Van Der Maas v. Comm'r of Soc. Sec.*, 198 F. App'x 521, 526 (6th Cir. 2006).

### F.    Analysis and Conclusion

Plaintiff contends the ALJ's RFC determination is not supported by substantial evidence as she failed to properly weigh the opinion of treating physician Dr. Singh. (ECF No. 15). Further, Plaintiff argues the ALJ erred by inserting her own lay medical functionality determination after rejecting all of the medical opinions of record. (*Id.* at PageID.817).

The Commissioner responds asserting the ALJ properly found Dr. Singh's March 2019 opinion to be inconsistent with the record given that in February 2019 the treatment notes stated Plaintiff was generally "doing fine." (ECF No.18, PageID.842 (citing ECF No. 12, PageID.641)). Further, the ALJ did not mischaracterize evidence or ignore Plaintiff's reports of ongoing symptoms, including her NYHA Class II-III symptoms. (ECF No. 18, PageID.844). The Commissioner also argues that the ALJ did not fail to consider the record as a

whole as the decision demonstrates the "ALJ considered much of the evidence Plaintiff cites" in her brief.  (*Id.* at PageID.845).  In regard to Plaintiff's second argument, the Commissioner argues the ALJ did not reject all of the remaining medical opinions but instead explained that she was "not persuaded fully" and generally found based on Plaintiff's subjective statements additional limitations were warranted.  (*Id.* at PageID.848).  More importantly, the Commissioner argues Plaintiff fails to explain how she was harmed by the ALJ rejecting most of the medical opinions in favor of a more restrictive RFC.  (*Id.*).

    1.  <u>The ALJ Appropriately Analyzed and Considered Dr. Singh's Treating Source Opinion</u>

On March 7, 2019, Dr. Singh completed a Physical Residual Functional Capacity Questionnaire ("PRFCQ") which based on the substance of the information contained in the questionnaire appears to be the equivalent of a treating source opinion form.  (ECF No. 12, PageID.634-37).  The PRFCQ lists the following diagnoses: Chronic systolic heart failure, left bundle branch block, supraventricular tachycardia, and BiV-ICD in place.  (*Id.*).  It states Plaintiff suffers from fatigue, occasional drowsiness, and dyspnea on exertion.  (*Id.*).  Dr. Singh indicates Plaintiff's experience of pain or other symptoms are severe enough to interfere with the attention and concentration needed to perform even simple work tasks on a frequent basis.  (*Id.* at PageID.635).  He went on to opine that Plaintiff is incapable of even "low stress" jobs and will become anxious in stressful

situations.  (*Id.*).  He indicated Plaintiff cannot walk an entire city block without rest or severe pain, can only sit for 15 minutes before needing to get up, and can only stand for 30 minutes before needing to sit down or walk around.  (*Id.*).  He goes on to opine that during an 8-hour workday, Plaintiff can sit and stand/walk for less than two hours, needs to take ten 10-minute walks, and needs a job that will permit her to shift positions at will and take unscheduled breaks.  (*Id.* at PageID.636).  Dr. Singh also opined Plaintiff could rarely lift and carry 10 pounds; occasionally look down and up, turn her head right or left, or hold her head in a static position; occasionally twist, stoop (bend), climb ladders; and frequently climb stairs.[7]  (*Id.* at PageID.636-37).  Finally, without explanation, Dr. Singh opined Plaintiff would be absent from work about four days per month as a result of impairments or treatment.  (*Id.* at PageID.637).

The ALJ did not give any specific evidentiary weight to Dr. Singh's PRFCQ as she found the opinion to be inconsistent with the overall medical record.  (*Id.* at PageID.77).  Plaintiff contends the ALJ mischaracterized the statement included in the February 12, 2019 treatment notes which indicated Plaintiff was "apparently doing fine," (*id.* at PageID.641), and that the manner in which the ALJ considered this statement failed to appreciate the notation included in the same treatment note

---

[7] The query regarding Plaintiff's ability to crouch/squat was unanswered.  (ECF No. 12, PageID.637).

that Plaintiff had stable NYHA Class II-III symptoms, (*id.*; ECF No. 15,

PageID.819).  Plaintiff further contends the ALJ's decision is not supported by

substantial evidence as she failed to consider the record as a whole and cites to the

following evidence as examples to support this contention: Dr. Singh's

determination that Plaintiff had NYHA Class II-III symptoms which means

ordinary or less than ordinary activity caused fatigue, palpitation or shortness of

breath or the test results showing Plaintiff's EF at 18% on February 23, 2016 to

only 45% on July 13, 2018.  (ECF No. 12, PageID.358, 642; ECF No. 15,

PageID.820).

The opinions included in a statement received from an acceptable medical

source provide evidence to the Commissioner "about the nature and severity of an

individual's impairment(s), including symptoms, diagnosis and prognosis, what the

individual can still do despite the impairment(s), and physical and mental

restrictions." *Jackson v. Comm'r of Soc. Sec.*, 2017 WL 4699721, at *5 (E.D.

Mich. Oct. 19, 2017).  When such opinions are issued "the regulations deem the

statements to be 'medical opinions' subject to a multi-factor test that weighs their

value." *Id.* (citing 20 C.F.R. § 404.1527).

"The ALJ must use a six-factor balancing test to determine the probative

value of medical opinions from acceptable sources."  20 C.F.R. § 404.1527(c).

"The test looks at whether the source examined the claimant, 'the length of the

treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and specialization of the treating source.'" *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004)). Opinions that are unsupported by the medical record, merely state a conclusion, or contradicted by substantial medical evidence may be rejected by the ALJ. *Bennett v. Comm'r of Soc. Sec.*, 2016 WL 7486277, at *3 (W.D. Mich. Dec. 30, 2016).

The ALJ's decision demonstrates that she neither mischaracterized the "apparently doing fine" statement nor failed to appreciate the notation included in the same treatment note that Plaintiff had stable NYHA Class II-III symptoms. First, while Plaintiff focuses on one of the instances where Plaintiff was observed as "doing fine," the medical record contains multiple notations from April 2017 to February 2019, approximately one month before Plaintiff's hearing before the ALJ, where Plaintiff was observed as generally doing well or fine. (ECF No. 12, PageID.640, 641, 702, 708, 712). Further, the majority of the treatment notes where Plaintiff is recorded as "overall doing well" or "apparently doing fine" indicate that she was experiencing this positive state of being while still experiencing NYHA Class II-III symptoms. (*Id.* at PageID.640, 641, 702). Second, when discussing the statement at issue—Plaintiff was "largely doing well"—the ALJ's decision states "[o]n June 20, 2018, Majed Afana, M.D.,

17

reported the claimant was largely 'doing well' with a New York Heart

Classification II to III symptoms but had 'some recent orthopnea and intermittent

paroxysmal nocturnal dyspnea or (PND) without other complaints.'" (*Id.* at

PageID.74).  In her decision, the ALJ represented the treatment notes regarding

Plaintiff's generally positive state of being in the exact manner in which they were

displayed in the record as shown by the citation above.  The ALJ then went on to

discuss in greater detail Plaintiff's NYHA Class II-III symptoms as they were

discussed in her medical record.  (*Id.*).  Notably, the treatment notes at issue,

specifically the February 12, 2019 treatment note which indicated Plaintiff was

"apparently doing fine" did not contain additional notations qualifying or limiting

Plaintiff's positive state of being in light her experiencing NYHA Class II-III

symptoms.  The undersigned finds this argument is baseless and unsupported by

the record.

Second, the ALJ's decision not to consider Dr. Singh's PRFCQ is supported

by substantial evidence as the medical opinions included in Dr. Singh's PRFCQ

are inconsistent and conflict with the underlying medical record.  First, from June

2018 to February 2019, less than a month before Dr. Singh issued his PRFCQ,

Plaintiff's medical records demonstrated that she was "largely doing well with

NYHA class II-III symptoms" or "apparently doing fine."  (ECF No. 12,

PageID.640, 641, 702, 708, 712).  Despite the fact that Plaintiff appeared to be

doing generally well, a month after her latest visit to Dr. Singh's office he issued a

PRFCQ which indicates Plaintiff's experience of pain or other symptoms are

severe enough to interfere with the attention and concentration needed to perform

even simple work tasks on a frequent basis and that she is unable to sit for more

than 15 minutes at a time without any explanation as to why.  (*Id.* at PageID.635).

Dr. Singh's opinions that Plaintiff's pain and other symptoms are so severe that she

is unable to perform even simple work tasks on a frequent basis or sit for more

than 15 minutes at a time are inconsistent with the statements in the medical record

which note that during various visits Plaintiff was observed as doing generally well

or fine and that her heart condition was generally under control.  (*Id.* at

PageID.640, 641, 702, 708, 712).  His opinion that Plaintiff is restricted to a less

than sedentary residual functional capacity is inconsistent with the medical record

and thus the ALJ was not required to adhere to it.  *Rottmann v. Comm'r of Soc.

Sec.*, 817 F. App'x 192, 195 (6th Cir. 2020) (finding it was proper for the ALJ to

give little weight to the doctor's opinion as his own medical evidence in the record

was inconsistent with his opinion).

Third, the ALJ's decision demonstrates that she considered the medical

record as a whole despite Plaintiff's contention.  While Plaintiff frames the

argument as the ALJ failed to consider the medical record as a whole, she is

attempting to challenge the ALJ's findings because she disagrees with the ultimate

conclusion.  The undersigned finds this argument meritless.  For example, Plaintiff

identifies Dr. Singh's determination that Plaintiff had NYHA Class II-III

symptoms which indicates ordinary or less than ordinary activity caused fatigue,

palpitation or shortness of breath as one record the ALJ failed to consider which

was consistent and supported Dr. Singh's opinion.  As discussed above, the

medical record as a whole did not support Dr. Singh's opinion.  Further, the ALJ's

decision specifically cites to records which reference Plaintiff's NYHA Class II-

III.  (ECF No. 12, PageID.73-74).  Next, Plaintiff points to the test results showing

Plaintiff's EF at 18% on February 23, 2016 to only 45% on July 13, 2018.  This

example undermines Plaintiff's position entirely as (1) discussed above the

medical record as a whole does not support Dr. Singh's opinion and (2) the ALJ

explicitly discusses these results in the decision (*id.* at PageID.73).  Despite the

fact that the ALJ was not required to discuss each individual piece of evidence in

the record, her analysis demonstrates that she carefully reviewed the record

including the specific records Plaintiff identifies as examples of her not doing so.

*Kornecky*, 167 F. App'x at 508 ("[A]n ALJ can consider all the evidence without

directly addressing in his written decision every piece of evidence submitted by a

party") (internal citation marks omitted); *see also Van Der Maas*, 198 F. App'x at

526; *see also Rottmann*, 817 F. App'x at 195-96 (holding plaintiff's argument that

the ALJ failed to address certain findings in her doctors' reports were misplaced as

his "analysis demonstrated that he carefully reviewed the record").

The mere fact that Plaintiff disagreed with the ALJ's ultimate conclusions is insufficient to support her argument that the ALJ did not consider the record as a whole. As discussed above, the ALJ highlighted examples of substantial evidence that did not support Dr. Singh's PRFCQ. Thus, based on the undersigned's review of the ALJ's analysis and the record, the contemporaneous medical records created near the time Plaintiff alleges her disability began support the ALJ's finding that Plaintiff does not qualify as disabled under the Act.

      2.  <u>The ALJ did not Substitute Her Own Lay Opinion when Determining Plaintiff's RFC</u>

Plaintiff further maintains the ALJ improperly rejected the remaining medical opinions included in the record. (ECF No. 15, PageID.850). As discussed above, Plaintiff did not challenge the ALJ's findings regarding her mental impairments and thus the undersigned will proceed to only address the ALJ's treatment of Drs. Milagros Flores's and Lasmi Manyam's medical opinions.

Dr. Flores found Plaintiff was entitled to:

> A light residual functional capacity consisting of occasionally lifting and/or carrying 20 pounds; frequently lifting and/or carrying 10 pounds; standing and/or walking for a total of four hours and sitting for a total of about six hours in an eight-hour workday; unlimited pushing and/or pulling, other than shown, for lifting and/or carrying; occasional climbing of ramps and stairs; no climbing of ladders, ropes, scaffolds; unlimited balancing; frequent stooping, kneeling, crouching; and

occasional crawling due to the combination of
[Plaintiff's] history of congestive heart failure with an
ICD in pace.

[A]void concentrated exposure to heat, humidity, fumes,
odors, dusts, gases, poor ventilations, hazards and should
have no exposure to unprotected heights.

(ECF No. 12, PageID.76,123-25).  The ALJ found that she was not persuaded by

Dr. Flores's opinion as "he did not have an opportunity to consider hearing level

evidence or testimony of a worsening of the claimant's condition in anticipation of

an ablation procedure, which the undersigned finds warrants additional limiting

restrictions . . . ."  (ECF No. 12, PageID.77).

Next, Plaintiff points to Dr. Manyam's opinion which indicated Plaintiff

"had limitation of heavy lifting, carrying, and long standing and walking due to

congestive heart failure and weakness."  (ECF No. 12, PageID.76, 588-90).  The

ALJ found this opinion was not consistent with the medical evidence.  The

undersigned agrees based on the discussion above regarding Plaintiff's medical

condition.  Moreover, the ALJ was not "persuaded by the consultant's opinion

because the consultant did not have an opportunity to consider hearing level

evidence or testimony of a worsening of the claimant's medical condition

justifying a less than full range of sedentary residual functional capacity."  (ECF

No. 12, PageID.76).  The RFC fashioned by the ALJ delegates Plaintiff to

sedentary work which under 20 C.F.R. § 404.1567 is defined as "involving lifting

no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers and small tools."  Further, while some amount of walking and standing is often necessary to carry out job duties, this is only occasional.  The RFC ultimately crafted by the ALJ was more in line with the medical record as a whole, including Plaintiff's hearing testimony, which demonstrated she is capable of occasionally walking and standing as she said she does a bit of light housework, vacuums periodically throughout the week, feeds the animals, does laundry, and goes grocery shopping.  (ECF No. 12, PageID.97, 99).

*Smiley v. Commissioner of Social Security* does not support Plaintiff's contention that the ALJ's treatment of Drs. Flores's and Manyam's medical opinions is sufficient to remand the case.  940 F. Supp. 2d 592, 601 (S.D. Ohio 2013).  In *Smiley*, while the ALJ did not "credit *any* medical opinion evidence in reaching her RFC assessment" and instead "based her RFC assessment on her own medical conclusion" her finding that plaintiff was capable of performing work at the medium exertional level was unsupported by substantial evidence.  *Id.* at 599, 601.  Notably, in *Smiley*, the ALJ "ignored countless reports regarding the severity of Plaintiff's impairments as well as the limitations caused by those impairments, and improperly substituted her interpretation in place of the opinions of treating and state agency physicians."  *Id.* at 601.  Whereas in the current matter, the ALJ did not substitute her interpretation in place of the opinions of the treating and state

agency physicians.  She found that due to the fact they did not have an opportunity to consider hearing level evidence and testimony she was not persuaded by their opinions and found that more restrictive limitations were warranted.  (ECF No. 12, PageID.76).

Similar to the ALJ in *Baker o/b/o Baker v. Berryhill*, the ALJ in this case appropriately considered the medical consultant's opinion when crafting the RFC. 2018 WL 1173782, at *2 (W.D.N.Y. Mar. 6, 2018).  The inclusion of the additional limitations, that were even more restrictive than those recommended by the state agency, demonstrate the ALJ's intention in crafting a detailed and tailored RFC that would specifically address Plaintiff's conditions and is generally not a basis for remand.  *Id.*; *see Castle v. Colvin*, 2017 WL 3939362, at *3 (W.D.N.Y. Sept. 8, 2017) ("the fact that the ALJ's RFC assessment did not perfectly match Dr. Balderman's opinion, and was in fact more restrictive than that opinion, is not grounds for remand"); *Savage v. Comm'r of Soc. Sec.*, 2014 WL 69025, at *7 (D. Vt. Feb. 24, 2014) (finding no harm to claimant where ALJ adopted an RFC determination that was more restrictive than medical source's opinion).

Based on the record, the undersigned finds the ALJ's treatment of the medical opinions was not an error and the RFC is supported by substantial evidence.

### G.    Conclusion

Plaintiff has the burden of proof on her statements of error. *Walters*,127 F.3d at 529. Plaintiff has not shown legal error that would upend the ALJ's decision. For the foregoing reasons, it is **RECOMMENDED** that the Court **DENY** Plaintiff's motion for summary judgment (ECF No. 15), **GRANT** Defendant's motion for summary judgment (ECF No. 18), and **AFFIRM** the Commissioner of Social Security's decision.

## II.    PROCEDURE ON OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981). Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and

Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity.  Fed. R. Civ. P. 72(b)(2), Local Rule 72.1(d).  The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc.  If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date: July 23, 2021                              s/Curtis Ivy, Jr.
                                                 Curtis Ivy, Jr.
                                                 United States Magistrate Judge